SIXTH DIVISION
SEPTEMBER 17, 2010

No. 1-09-0346

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 12832 |
| | ) | |
| FRANK HUBBARD, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Following a bench trial, defendant Frank Hubbard was convicted of possession of a controlled substance (less than 15 grams of heroin) and sentenced to 18 months' imprisonment with fines and fees.

On appeal, he claims, first, that his $200 fee for DNA analysis was improper because he provided a DNA sample and was assessed the analysis fee following a prior felony conviction or disposition. 730 ILCS 5/5-4-3(j) (West 2008). He claims, second, that his $10 fee for the Arrestee's Medical Costs Fund (730 ILCS 125/17 (West 2006)) was erroneously assessed because there was no evidence that he was injured, or that the county incurred medical expenses for him, while he was in the custody of the county.

For the reasons discussed below, we find both claims unpersuasive.

BACKGROUND

Since neither claim concerns the facts of his underlying conviction, we will dispense with a recitation of those facts.

The trial court initially assessed fees and fines in the amount of $1,165, including a $200 DNA analysis charge, pursuant to section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)), and a $10 charge for the Arrestee's Medical Costs Fund, pursuant to section 17 of the County Jail Act (730 ILCS 125/17 (West 2006)). The trial court subtracted the $5-per-day presentence incarceration credit for 69 days from the total of fines, reducing the total fines, fees and costs defendant owed to $820.

On appeal, defendant did not challenge his conviction or sentence, but raised claims that the trial court improperly assessed a $200 DNA analysis charge and a $10 Arrestee's Medical Costs Fund charge. In the appellate brief filed by the State Appellate Defender on defendant's behalf, defendant stated:

> "Hubbard, however, was previously convicted of other felonies in 1998 and 2005, and thus, he already submitted a DNA sample and paid the $200 DNA analysis fee. [Citation.] Because Hubbard already submitted a DNA sample for analysis, it was improper for the court to impose another fee on him for a duplicate procedure."

However, the record was devoid of evidence showing that defendant previously paid a DNA analysis charge. Thus, on July 6, 2010, the appellate court ordered the State Appellate Defender to supplement the record with the pertinent portions of defendant's prior conviction record which would substantiate the claim made in defendant's appellate brief.

On August 18, 2010, defendant supplemented the record with two volumes, which contained: (1) an order concerning fines and fees, entered May 31, 2005, showing that defendant was ordered to pay a $200 DNA analysis fee, "no later than 60 days prior to the termination of probation"; and (2) a report from the Illinois State Police's DNA Indexing Laboratory which showed that a DNA sample was collected from defendant on June 21, 2005.

These two documents confirmed that a DNA analysis fee was previously assessed against defendant and that a DNA sample was previously obtained from defendant. However, these documents did not show whether defendant actually paid the assessed fee.

ANALYSIS

1. DNA Analysis Fee

As noted above, the record on appeal shows that defendant was assessed the analysis fee both in the instant case and in an earlier felony case and that his DNA sample was taken pursuant to the earlier case.

Section 5-4-3 of the Unified Code of Corrections provides that any person convicted or found guilty of a felony must submit DNA samples to the Department of State Police and pay an analysis fee of $200. 730 ILCS 5/5-4-3(a), (j) (West 2008). Defendant claims that, because he provided DNA samples and was assessed the analysis fee under a prior conviction, he has satisfied the requirements of the statute. In other words, he argues that section 5-4-3 requires only one submission of DNA samples and one assessment of the analysis fee, so that the current $200 analysis fee is improperly duplicative.

The State responds that nothing in the record demonstrates that defendant previously paid the analysis fee. There is a difference between assessment and actual payment. The State notes that defendant has the burden of providing this court with a sufficiently complete record to support his claim of error and any doubts arising from the record's incompleteness must be resolved against him. People v. Hunt, 234 Ill. 2d 49, 58 (2009). However, while the record does not show whether defendant has paid the analysis fee, the issue presented by defendant is, as stated above, whether the fee may be assessed more than once. Because the record is clear that defendant was assessed the DNA analysis fee at least twice, we shall consider the merits of his claim.

Section 5-4-3(a) provides that "[a]ny person *** convicted or found guilty of any offense classified as a felony under Illinois law *** shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section." 730 ILCS 5/5-4-3(a) (West 2008). Section 5-4-3(j) then provides that "[a]ny person required by subsection (a) to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for analysis and categorization into genetic marker grouping, in addition to any other disposition, penalty, or fine imposed, shall pay an analysis fee of $200." 730 ILCS 5/5-4-3(j) (West 2008).

We have recently considered and rejected claims substantially identical to those raised by defendant. People v. Grayer, No. 1-09-0021, slip op. at 7 (August 24, 2010); People v. Marshall, No. 3-08-0825, slip op. at 7 (July 8, 2010). In Grayer and Marshall, we noted that the statute does not expressly require a fee for every felony conviction, but also that "nothing in the statutory language limits the taking of DNA samples or the assessment of the analysis fee to a single instance." Grayer, slip op. at 6; see also Marshall, slip op. at 6.

We observed in Grayer:

> "A cursory examination of the Criminal Code reveals that our legislature is keenly aware of recidivism, with several offenses aggravated by prior convictions. Despite this awareness and willingness to manifest it in statutes, the legislature did not address the issue of successive qualifying convictions in section 5-4-3, either by expressly authorizing or expressly excepting the taking of a second DNA sample or assessment of a second analysis fee upon a second qualifying conviction." Grayer, slip op. at 6.

We found that this statutory language links assessment of the fee to the defendant's obligation to provide a DNA sample, but rejected the argument that additional DNA samples

4

would serve no purpose. Grayer, slip op. at 6, citing People v. Willis, No. 1-08-2609, slip op. at 22-23 (May 21, 2010), and People v. Evangelista, 393 Ill. App. 3d 395, 399 (2009). We found no absurdity, injustice, or significant inconvenience in collecting a new DNA sample whenever a defendant is newly convicted of a qualifying offense. Grayer, slip op. at 6-7. We envisioned at least two reasons for doing so: to have fresh samples, and to be able to subject new samples to new methods of collecting, analyzing, and categorizing DNA samples. Grayer, slip op. at 7.

We see no reason to depart from our holdings in Marshall and Grayer; and thus we hold that the DNA analysis fee may be assessed upon any qualifying conviction or disposition, whether or not it was previously assessed. Accordingly, this second fee was properly assessed upon defendant.

### 2. Arrestee's Medical Costs Fund

Second, defendant claims that his $10 fee for the Arrestee's Medical Costs Fund (730 ILCS 125/17 (West 2006)) was improperly assessed because there is no indication that he was injured, or incurred medical expenses for the county, while in custody.

At the time of defendant's offense in June 2008, the relevant statute provided:

> "When medical or hospital services are required by any person held in custody, the county *** shall be entitled to obtain reimbursement from the Arrestee's Medical Costs Fund to the extent moneys are available from the Fund. To the extent that the person is reasonably able to pay for that care, including reimbursement from any insurance program or from other medical benefit programs available to the person, he or she shall reimburse the county.
>
> The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation, other than a petty

offense or business offense. The fee shall be taxed as costs to be collected from the defendant, if possible, upon conviction or entry of an order of supervision. The fee shall not be considered a part of the fine for purposes of any reduction in the fine.

All such fees collected shall be deposited by the county in a fund to be established and known as the Arrestee's Medical Costs Fund. Moneys in the Fund shall be used solely for reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff and administration of the Fund.

\*\*\* For the purposes of this Section, 'medical expenses relating to the arrestee' means only those expenses incurred for medical care or treatment provided to an arrestee on account of an injury suffered by the arrestee during the course of his or her arrest unless such injury is self-inflicted; the term does not include any expenses incurred for medical care or treatment provided to an arrestee on account of a health condition of the arrestee which existed prior to the time of his or her arrest." (730 ILCS 125/17 (West 2006).

Defendant notes that this court has held that this fee may not be assessed where "[n]o evidence in the record suggests that [the] defendant underwent any medical treatment for an injury suffered during his arrest." People v. Cleveland, 393 Ill. App. 3d 700, 714 (2009).

In Cleveland, the first division vacated a $10 charge for the Arrestee's Medical Costs Fund, on the ground that the defendant in that case had not undergone any medical treatment while in custody and that the charge should be applied only to costs for medical expenses "

'relating to the arrestee.' " Cleveland, 393 Ill. App. 3d at 714, quoting 730 ILCS 125/17 (West 2006).

Cleveland was decided on August 3, 2009, and was authored by the same author as this present opinion. Over a month later, on September 11, 2009, the Second District released for publication People v. Evangelista, 393 Ill. App. 3d 395 (2009). In Evangelista, Justice Schostok persuasively wrote that the charge was to be collected from every defendant, in order to create a fund to pay for medical expenses for all arrestees who required medical care while in custody. Evangelista, 393 Ill. App. 3d at 400, quoting 730 ILCS 125/17 (West 2006) (the $10 charge " 'shall *** be collected from the defendant' ").

The collection of this $10 charge is authorized and discussed in two paragraphs of section 17 of the County Jail Act. 730 ILCS 125/17 (West 2006). The first of these two paragraphs states unequivocally that "[t]he county shall be entitled to a $10 fee for each conviction." 730 ILCS 125/17 (West 2006). The only exception is if the conviction is for "a petty offense or business offense." 730 ILCS 125/17 (West 2006). This paragraph does not provide an exception for defendants who had no need of medical care. Thus, the mandatory and unequivocal language of this first paragraph shows that the county is entitled to the $10 charge, whether or not a particular defendant required medical services.

Although the first paragraph is crystal clear, the Evangelista court noted that the second paragraph is "potentially confusing." Evangelista, 393 Ill. App. 3d at 400. A line in the second paragraph states: "Moneys in the Fund shall be used solely for reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff and administration of the Fund." 730 ILCS 125/17 (West 2006). The Evangelista court found this line to be "potentially confusing" because "it could be read to allow expending the funds received only for the particular arrestee in question." Evangelista, 393 Ill. App. 3d at 400.

The Evangelista court rejected this potential interpretation, finding that the first paragraph governed when the charge should be collected, while the second paragraph governed how the collected moneys should be spent. Evangelista, 393 Ill. App. 3d at 400, citing 730 ILCS 125/17 (West 2006). Thus the Evangelista court found the language of the first paragraph to be controlling of the issue before it, and this author now agrees. See also People v. Elcock, 396 Ill. App. 3d 524, 539-40 (2d Dist. 2009) (reaffirming its holding in Evangelista and observing that the statutory scheme "requires all convicted defendants to contribute to the fund").

The Evangelista court offered an additional reason for rejecting this potential interpretation. It interpreted "the singular 'arrestee' to apply to 'arrestees' in general," and thus it transformed a singular word into a plural one. Evangelista, 393 Ill. App. 3d at 400, citing 5 ILCS 70/1.03 (West 2006) ("Words importing the singular number may extend and be applied to several persons or things").

However, there is no need to struggle to turn a singular word into a plural one, when the second paragraph goes on to direct that the moneys may also be used for "administration of the Fund." 730 ILCS 125/17 (West 2006). The second paragraph provides that the moneys could be used either for "medical expenses relating to the arrestee" or for "administration of the Fund." 730 ILCS 125/17 (West 2006).

On December 24, 2009, the sixth division decided People v. Jones, which was authored by the same author as both Cleveland and this present opinion. People v. Jones, 397 Ill. App. 3d 651, 661-63 (2009), pet. for leave to appeal pending, No. 109874. In Jones, the sixth division adopted the ruling by the Second District in Evangelista. Jones, 397 Ill. App. 3d at 663. We disagreed only with the Evangelista court's transformation of the singular "arrestee" into a plural, as explained above, but we reached the same ultimate conclusion as the Second District. Jones, 397 Ill. App. 3d at 663.

For the reasons stated in <u>Jones</u>, we conclude that the fee was properly assessed upon defendant's conviction, regardless of whether he was injured or treated while in custody.


CONCLUSION

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL and J. GORDON, JJ., concur.