FIRST DIVISION
December 3, 2010

No. 1-09-1461

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08 CR 21720 |
| KEITH RIGSBY, | ) ) | Honorable John T. Doody, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HALL delivered the opinion of the court:

Following a jury trial, defendant Keith Rigsby was found guilty of possession of a controlled substance (cocaine) with intent to deliver. Defendant was sentenced as a Class X offender to seven years' imprisonment. He was also required to submit a sample of his DNA (deoxyribonucleic acid) for forensic analysis and indexing and ordered to pay a $200 DNA analysis fee pursuant to section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)).

Section 5-4-3 of the statute provides that any person convicted or found guilty of any offense classified as a felony under Illinois law must submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for DNA analysis and pay an analysis fee of $200. 730 ILCS 5/5-4-3(a), (j) (West 2008). One of the purposes behind the statute is to

No. 1-09-1461

create a database of the genetic identities of recidivist criminal offenders. People v. Burdine, 362 Ill. App. 3d 19, 30, 839 N.E.2d 573 (2005); see also People v. Evangelista, 393 Ill. App. 3d 395, 399, 912 N.E.2d 1242 (2009) ("obvious purpose of the statute is to collect from a convicted defendant a DNA profile to be stored in a database").

Defendant was previously convicted of drug-related felonies that required him to provide DNA samples and to pay corresponding analysis fees in cases Nos. 04 CR 25513 and 05 CR 2936. He argues on appeal that the trial court erred in requiring him to submit additional DNA samples and in ordering him to pay additional DNA analysis fees in connection with his present conviction. Defendant contends that the statute should not be read to require submission of multiple and duplicative DNA samples and payment of additional analysis fees from an offender who has already submitted DNA samples pursuant to a prior conviction and has paid a corresponding analysis fee. We agree.

Section 5-4-3 of the statute is silent and says nothing about requiring offenders to provide additional DNA samples upon every qualifying conviction or requiring payment of additional DNA analysis fees from an offender who has already complied with the statutory requirements and has samples of his DNA on file in the police database. The legislature's silence on these issues creates an ambiguity in the statute that permits us to look beyond its text to resolve the ambiguity. See People v. Bomar,

-2-

No. 1-09-1461

Nos. 3-08-0985, 3-08-0986, slip op. at 21 (October 15, 2010) (McDade, J., concurring in part and dissenting in part); see, e.g., Borowiec v. Gateway 2000, Inc., 209 Ill. 2d 376, 401, 808 N.E.2d 957 (2004).

In Illinois, DNA is collected from qualifying offenders by detention facilities or by certain designated state, local, or private agencies. 730 ILCS 5/5-4-3(d-5), (d-6) (West 2008). Under section 1285.30 of Title 20 of the Administrative Code, which is the implementing regulation for section 5-4-3 of the statute, facilities and agencies responsible for collecting DNA samples are designated based on the statutory presumption that the qualifying offender has not previously had a sample taken or collected: "*If the qualifying offender has not previously had a sample taken*" and is serving a term of incarceration in a facility under the control of the county sheriff or is being transferred to another state to serve the sentence, the designated agency is the sheriff's office; "*[i]f the qualifying offender has not previously had a sample taken*" and is transferred to a facility under the control of the Department of Corrections to serve a term of incarceration, the designated agency is the Department of Corrections; "*[i]f the qualifying offender has not previously had a sample taken*" and is transferred to a facility under the control of the Department of Juvenile Justice to serve a term of incarceration, the designated agency is the Department of Juvenile Justice; "*[i]f the*

-3-

No. 1-09-1461

*qualifying offender has not previously had a sample collected*"
and is transferred to the Department of Corrections to be
institutionalized as a sexually dangerous person or
institutionalized as a person found guilty but mentally ill of a
sexual offense or an attempted sexual offense, the designated
agency is the Department of Corrections; "*[i]f the qualifying
offender has not previously had a sample collected*" and is
ordered committed as a sexually violent person, the designated
agency is the Department of Human Services; and "*[i]f the
qualifying offender has not previously had a sample collected*"
and is serving a sentence but not physically incarcerated, the
designated agency is the supervising agency such as a probation
office. (Emphasis added.) 20 Ill. Adm. Code §§1285.30(c)(1)
through (c)(6), amended at 31 Ill. Reg. 9249, 9254-55, eff. June
12, 2007.

In light of the italicized statutory language quoted above,
it is reasonable to assume that, in practice, a designated
facility or agency charged with administering the statute would
not interpret it to require submission of multiple and
duplicative DNA samples from an offender who has already
submitted samples pursuant to a prior conviction. See Bomar, slip
op. at 21 (McDade, J., concurring in part and dissenting in
part); see also Evangelista, 393 Ill. App. 3d at 399 ("Once a
defendant has submitted a DNA sample, requiring additional
samples would serve no purpose").

-4-

No. 1-09-1461

A one-time submission into the police DNA database is sufficient to satisfy the purpose of the statute in creating a database of the genetic identities of recidivist criminal offenders, because once an offender's DNA data is stored in the database, it remains there unless and until the offender's conviction is reversed based on a finding of actual innocence or he is pardoned based on a finding of actual innocence. 730 ILCS 5/5-4-3(f-1) (West 2008).

Moreover, since the analysis fee is intended to cover the costs of the DNA analysis, and only one analysis is necessary per qualifying offender, then by extension only one analysis fee is necessary as well. See Bomar, slip op. at 21-22 (McDade, J., concurring in part and dissenting in part); People v. Willis, 402 Ill. App. 3d 47, 61, 934 N.E.2d 487 (2010). Notably, when the legislature has intended for a fee to be imposed on a per-conviction basis rather than a per-defendant basis, it has said so. See, e.g., 730 ILCS 125/17 (West 2008) ("The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation ***").

We do not believe the analysis set forth in People v. Marshall, 402 Ill. App. 3d 1080, 931 N.E.2d 1271 (2010), dictates a different result. In Marshall, the reviewing court determined that if an offender was required to submit only one DNA sample, a scenario could occur in which the offender could wind up not having any DNA sample on file. Marshall, 402 Ill. App. 3d at

-5-

No. 1-09-1461

1083.

The Marshall court reasoned that a possible sequence of events could occur in which: the offender was convicted of a qualifying offense and a sample of his DNA was collected; the offender was then convicted of a second qualifying offense, but this time, no DNA sample was collected because a sample was already on file; the offender's first conviction is reversed and his DNA sample is expunged pursuant to section 5-4-3(f-1) (730 ILCS 5/5-4-3(f-1) (West 2008)), resulting in the offender having no DNA sample on file even though he has a valid conviction for a qualifying offense. Marshall, 402 Ill. App. 3d at 1083.

We do not read the statute as providing such a loophole. We interpret the statute as requiring that a single DNA sample remain in the database for each person convicted of a qualifying offense. This means that if an offender's previous sample was expunged for whatever reason, a subsequent conviction would naturally require a new sample be taken and this would be sufficient for maintenance of the DNA database.

We also reject the notion mentioned in People v. Grayer, No. 1-09-0021, slip op. at 1-2 (August 24, 2010), that the desire to have fresh samples of DNA justifies requiring the submission of multiple and duplicative samples from an offender who has already satisfied the statute by submitting DNA samples pursuant to a prior conviction. Samples of DNA can remain viable for thousands of years if maintained under appropriate conditions. See P. Tracy

-6-

No. 1-09-1461

& V. Morgan, Big Brother and his Science Kit: DNA Databases for 21st Century Crime Control?, 90 J. Crim. L. & Criminology 635, 673 n.105 (2000).

Finally, we reject the State's suggestion that a defendant who has been assessed a DNA analysis fee must first show that he actually paid the fee before he can challenge the fee on appeal. In enacting the statute, the legislature did not require payment of the DNA analysis fee as a prerequisite to challenging the fee. See Grayer, slip op. at 1-2.

We also reject the State's argument that the defendant forfeited this issue by failing to raise it in a postsentencing motion. Defendant's contention on appeal is that the trial court exceeded its statutory authority in ordering him to pay the DNA analysis fee and that therefore the order is void. A challenge to an alleged void order is not subject to forfeiture. People v. Arna, 168 Ill. 2d 107, 113, 658 N.E.2d 445 (1995).

Accordingly, for the reasons set forth above, we vacate that portion of the trial court's order requiring defendant to submit additional DNA samples and requiring him to pay the $200 DNA analysis fee. We affirm defendant's conviction in all other respects.

Affirmed in part and vacated in part.

PATTI, J., concurs.

JUSTICE LAMPKIN, dissenting:

I respectfully dissent. I would follow this court's earlier

-7-

No. 1-09-1461

decisions in Marshall, 402 Ill. App. 3d 1080, Grayer, People v. Hubbard, No. 1-09-0346 (September 17, 2010), and Bomar, and affirm the trial court's order requiring defendant to submit an additional DNA sample and pay the DNA analysis fee.

I agree with the analysis in Marshall, Grayer, Hubbard, and Bomar, which held that the trial court was authorized by statute to require the defendant to submit a DNA sample and pay the analysis fee, even though the defendant was ordered to do so previously as a result of an earlier qualifying conviction. These cases determined that (1) the submission of a qualifying defendant's DNA and assessment of the fee was mandatory under the language of the statute; (2) our legislature was keenly aware of recidivism and did not expressly create any exception for successive qualifying convictions; and (3) the collection of additional DNA samples is neither absurd nor unjust nor significantly inconvenient where it is reasonable to have fresh samples and the ability to subject new samples to new methods of collection, analysis, and categorization. Grayer, slip op. at 7-8; Hubbard, slip op. at 4-5.

Defendant's reliance on Evangelista, 393 Ill. App. 3d at 399, to support his appeal is misplaced, because the Evangelista court vacated the analysis fee based merely upon the parties' agreement that the taking of a DNA sample and assessment of the analysis fee in an earlier case barred a new assessment of the analysis fee. Also unavailing to defendant's position are

-8-

No. 1-09-1461

Willis, 402 Ill. App. 3d 47, and People v. Unander, No. 4-09-0411 (September 28, 2010), *as modified on denial of rehearing* (October 26, 2010). The Willis court followed Evangelista without acknowledging that Evangelista never analyzed the merits of this issue but, rather, merely accepted a concession of error. See Grayer, slip op. at 6-7. Furthermore, in Unander, the reviewing court vacated the analysis fee based primarily upon the trial court's conditional order that the defendant submit a sample and fee in the event he had not already done so. Unander, slip op. at 8. The case before us does not involve a conditional order.

In Marshall, 402 Ill. App. 3d at 1083, Grayer, slip op. at 7, Hubbard, slip op. at 4, and Bomar, slip op. at 16, this court noted that although the statute does not expressly require a fee for every felony conviction, it does not limit the taking of DNA samples or the assessment of the analysis fee to a single instance. Here, the majority contends that the statute is ambiguous and the language of our administrative code leads to the reasonable assumption that the designated agency charged with administering the statute probably does not collect additional DNA samples from previously convicted defendants. I, however, do not find persuasive the majority's reliance upon the inference it draws from the administrative code.

The section of the Administrative Code cited by the majority discusses the duty of a designated agency, *i.e.*, the county sheriff, Department of Corrections, Department of Juvenile

-9-

Justice, Department of Human Services, or probation office, to collect the defendant's DNA sample when he is in or transferred to a facility under that agency's control, if a sample has not been collected from the defendant previously. See 20 Ill. Adm. Code §1285.30(c), amended at 31 Ill. Reg. 9249, 9253, eff. June 12, 2007. That section, however, does not serve to support the inference drawn by the majority because, like the statute in dispute, there is no reference to initial or subsequent convictions. Without such clarification, the cited section may simply refer to the situation where a defendant convicted of a qualifying offense is transferred among the various agencies during the course of serving his sentence based upon that particular conviction.

Furthermore, the inference the majority seeks to draw from section 1285.30(c) is challenged by section 1285.70, which addresses the expungement of records. Specifically, section 1285.70 provides that the genetic marker grouping will be removed from the local, state, and national offender databases after receipt of a final court order requiring expungement "[i]n the event *the disposition or conviction upon which a sample collection was based* has been reversed based on actual innocence or that a pardon has been granted based on actual innocence." (Emphasis added.) 20 Ill. Adm. Code §1285.70, amended at 31 Ill. Reg. 9249, 9258, eff. June 12, 2007. This quoted language indicates an expectation that the databases will contain multiple

-10-

records based on multiple DNA samples where a defendant has successive qualifying convictions.

I do not believe that the submission of an additional DNA sample upon a defendant's subsequent conviction of a qualifying offense serves no purpose or is superfluous. As discussed in Marshall, the statutory provision for the expungement of records and destruction of DNA samples upon the reversal of a conviction or a pardon could result, under the majority's interpretation of the statute, in a scenario where a defendant's DNA is not on file despite his valid conviction of a qualifying offense. Marshall, 402 Ill. App. 3d at 1083. Specifically, under the majority's interpretation of the statute, it is possible that a defendant who is no longer in custody and has multiple convictions of qualifying offenses, could receive a pardon of his initial conviction. A danger exists then that his DNA, which was collected based upon his initial conviction, could be destroyed despite the existence of his subsequent and still valid convictions.

Although the majority dismisses the possibility that its interpretation of the statute creates such a "loophole," the majority cites to no statutory provision or agency procedure or rule that ensures against such a mishap. Notably, section 1285.70 of Title 20 of the Illinois Administrative Code contains no provision or warning to check for a defendant's multiple convictions before his record is deleted from the databases and

-11-

No. 1-09-1461

his DNA material is destroyed as a result of expungement.  20 Ill. Adm. Code §1285.70, amended at 31 Ill. Reg. 9249, 9258, eff. June 12, 2007.

Finally, because I would find that the statute authorized the trial court to order defendant to submit a DNA sample and pay the analysis fee, the trial court's order is not void and the procedural default by defendant should be honored on appeal.